No. 16-3090

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT
_____

### UNITED STATES OF AMERICA

v.

### CLIFFORD WARES,

Appellant

Appeal from the Final Judgment in a Criminal Case of the United States District Court for the District of New Jersey (Crim. No. 15-570). Sat Below: Honorable Esther Salas, U.S.D.J.

_____

### BRIEF FOR APPELLEE

_____

PAUL J. FISHMAN
United States Attorney
Attorney for Appellee
970 Broad Street
Newark, New Jersey 07102-2535
(973) 645-2700

On the Brief:
NORMAN GROSS
Assistant U.S. Attorney
401 Market Street
Camden, NJ 08101
(856) 968-4930
norman.gross@usdoj.gov

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................ iii

TABLE OF ABBREVIATIONS ................................................................. viii

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF RELATED CASES AND PROCEEDINGS ..................... 2

STATEMENT OF THE FACTS ................................................................. 2

STATEMENT OF THE CASE .................................................................. 15

SUMMARY OF ARGUMENT ................................................................. 16

ARGUMENT .......................................................................................... 18

I.    THE DISTRICT COURT PERMISSIBLY EXERCISED ITS
      DISCRETION BY DENYING WARES' SEVERANCE
      MOTION. ...................................................................................... 18

II.   THE DISTRICT COURT DID NOT PLAINLY ERR OR ABUSE
      ITS DISCRETION BY ADMITTING THE CHALLENGED
      EVIDENCE. .................................................................................. 24

      A.    The District Court Permissibly Exercised Its Discretion by
            Admitting Evidence of Wares' Efforts to Solicit the Minor
            Victims to Engage in Bestiality. ............................................ 25

            1.    Wares Failed to Preserve His Rule 403 Objection
                  to His Statements to Hannah and Kaitlyn About
                  Bestiality. ....................................................................... 25

            2.    Wares Cannot Establish Plain Error as to Those
                  Statements. ..................................................................... 26

            3.    Wares' Rule 403 Challenge to His Statements to
                  Taylor About Bestiality Fail to Establish Plain Error
                  or an Abuse of Discretion. ............................................. 29

i

           4.    Any Error Was Harmless. .................................................. 33

    B.    The District Court Permissibly Admitted Extrinsic
        Evidence of Wares' *Modus Operandi* to Prove His
        Identity as the Perpetrator of the Charged Crimes. ................... 35

           1.    Evidence Regarding Wares' 2009 Criminal Conduct. ..... 36

           2.    The Extrinsic Evidence Was Permissibly Admitted
                 to Prove *Modus Operandi*. ................................................ 37

           3.    Any Error Was Harmless. .................................................. 42

III.    THE DISTRICT COURT PERMISSIBLY EXCERCISED ITS
      DISCRETION BY DENYING WARES' MOTION TO BE
      TRIED UNDER A PSEUDONYM. ..................................................... 43

IV.    THE SENTENCE WAS PROCEDURALLY AND
      SUBSTANTIVELY REASONABLE. ................................................ 46

CONCLUSION ........................................................................................ 52

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Arizona v. Fulminante*,
    499 U.S. 279 (1991) ........................................................................... 38

*Bruton v. United States*,
    391 U.S. 123 (1968) ........................................................................... 38

*Bullock v. Carver*,
    297 F.3d 1036 (10th Cir. 2002) ........................................................ 47

*Chavarriaga v. N.J. Dep't of Corr.*,
    806 F.3d 210 (3d Cir. 2015) .............................................................. 47

*Doe v. Delta Airlines Inc.*,
    2016 WL 6989793 (2d Cir. 2016) ..................................................... 43

*Gall v. United States*,
    552 U.S. 38 (2007) ............................................................................. 46

*Gov't of the Virgin Islands v. Mills*,
    821 F.3d 448 (3d Cir. 2016) .............................................................. 43

*Gov't of Virgin Islands v. Albert*,
    241 F.3d 344 (3d Cir. 2001) .............................................................. 28

*Gov't of Virgin Islands v. Charleswell*,
    24 F.3d 571 (3d Cir. 1994) ................................................................ 30

*Gov't of Virgin Islands v. Pinney*,
    967 F.2d 912 (3d Cir. 1992) .............................................................. 39

*Prudential Ins. Co. of Am. v. Sipula*,
    776 F.2d 157 (7th Cir. 1985) ............................................................ 47

*Reina-Rodriguez v. United States*,
    655 F.3d 1182 (9th Cir. 2011) .......................................................... 51

*Richardson v. Marsh*,
   481 U.S. 200 (1987) ........................................................................................ 19

*Spain v. Gallegos*,
   26 F.3d 439 (3d Cir. 1994) .............................................................................. 31

*United States v. Almendares*,
   397 F.3d 653 (8th Cir. 2005) ........................................................................... 39

*United States v. Arrington*,
   159 F.3d 1069 (7th Cir. 1998) ......................................................................... 23

*United States v. Bailey*,
   840 F.3d 99 (3d Cir. 2016) .............................................................................. 35

*United States v. Bergrin*,
   682 F.3d 261 (3d Cir. 2012) ............................................................................ 31

*United States v. Boone*,
   279 F.3d 163 (3d Cir. 2002) ............................................................................ 26

*United States v. Bornman*,
   559 F.3d 150 (3d Cir. 2009) ............................................................................ 23

*United States v. Brunson*,
   516 F. App'x 154 (3d Cir. 2013) ...................................................................... 22

*United States v. Caldwell*,
   83 F.3d 954 (8th Cir. 1996) ............................................................................. 46

*United States v. Carroll*,
   207 F.3d 465 (8th Cir. 2000) ........................................................................... 39

*United States v. Cephus*,
   684 F.3d 703 (7th Cir. 2012) ........................................................................... 51

*United States v. Cherer*,
   513 F.3d 1150 (9th Cir. 2008) ......................................................................... 41

*United States v. Clayton*,
   950 F. Supp. 2d 1014 (N.D. Iowa 2013) ......................................................... 44

*United States v. Console,*
    13 F.3d 641 (3d Cir. 1993)................................................................22

*United States v. Cunningham,*
    694 F.3d 372 (3d Cir. 2012)..............................................................32

*United States v. Delaney,*
    443 F. App'x 122 (6th Cir. 2011) .....................................................41

*United States v. DeMuro,*
    677 F.3d 550 (3d Cir. 2012)..............................................................26

*United States v. Doe,*
    655 F.2d 920 (9th Cir. 1981) ............................................................45

*United States v. Duka,*
    671 F.3d 329 (3d Cir. 2011)..............................................................28

*United States v. Finley,*
    726 F.3d 483 (3d Cir. 2013)..............................................................32

*United States v. Flores-Mejia,*
    759 F.3d 253 (3d Cir. 2014)........................................................28, 50

*United States v. Fulton,*
    837 F.3d 281 (3d Cir. 2016)..............................................................26

*United States v. Givan,*
    320 F.3d 452 (3d Cir. 2003)..............................................................42

*United States v. Green,*
    617 F.3d 233 (2010)....................................................................19, 42

*United States v. Hutchinson,*
    588 F. App'x 894 (11th Cir. 2014) ...................................................52

*United States v. Irizarry,*
    341 F.3d 273 (3d Cir. 2003)..............................................................47

*United States v. John-Baptiste,*
    747 F.3d 186 (3d Cir. 2014)..............................................................23

*United States v. Kapordelis*,
    569 F.3d 1291 (11th Cir. 2009) ........................................................................ 41

*United States v. Lloyd*,
    269 F.3d 228 (3d Cir. 2001) ............................................................................. 46

*United States v. Lore*,
    430 F.3d 190 (3d Cir. 2005) ............................................................................. 19

*United States v. Mathis*,
    264 F.3d 321 (3d Cir. 2001) ............................................................................. 39

*United States v. McGuire*,
    627 F.3d 622 (7th Cir. 2010) ........................................................................... 41

*United States v. Mir*,
    525 F.3d 351 (4th Cir. 2008) ........................................................................... 22

*United States v. Moore*,
    115 F.3d 1348 (7th Cir. 1997) ......................................................................... 39

*United States v. Page*,
    657 F.3d 126 (2d Cir. 2011) ............................................................................. 22

*United States v. Patterson*,
    68 F. App'x 351 (3d Cir. 2003) ....................................................................... 31

*United States v. Riley*,
    621 F.3d 312 (3d Cir. 2010) ............................................................................. 30

*United States v. Rivas*,
    493 F.3d 131 (3d Cir. 2007) ............................................................................. 24

*United States v. Romero*,
    189 F.3d 576 (7th Cir. 1999) ........................................................................... 32

*United States v. Smith*,
    103 F.3d 600 (7th Cir. 1996) ........................................................................... 39

*United States v. Steiner*,
    847 F.3d 103 (3d Cir. 2017) ............................................................................. 33

*United States v. Stoterau*,
    524 F.3d 988 (9th Cir. 2008) ............................................................... 44

*United States v. Tomko*,
    562 F.3d 558 (3d Cir. 2009) ......................................................... 46, 50

*United States v. Universal Rehab. Servs. (PA), Inc.*,
    205 F.3d 657 (3d Cir. 2000) ................................................................ 30

*United States v. Vosburgh*,
    602 F.3d 512 (3d Cir. 2010) ................................................................ 32

*United States v. Walker*,
    657 F.3d 160 (3d Cir. 2011) ......................................................... 18, 19

*Zafiro v. United States*,
    506 U.S. 534 (1993) ..................................................................... 19, 21

## **STATUTES**

18 U.S.C. § 875(d) ............................................................................... 3, 9

18 U.S.C. § 2242(b) ................................................................................... 9

18 U.S.C. § 2251(a) ................................................................................... 3

18 U.S.C. § 2422(b) ............................................................................ 3, 27

18 U.S.C. § 2423(b) ............................................................................ 9, 27

## **RULES**

Fed. R. Crim. P. 8(a) ............................................................................... 19

Fed. R. Evid. 403 ........................................................................... passim

Fed. R. Evid. 404(b) ....................................................................... passim

Fed. R. Evid. 606(b) ................................................................................ 48

# **TABLE OF ABBREVIATIONS**

"A"          refers to the Appendix supplied by Defendant.

"DB"        refers to Defendant's Brief.

"D.E."      refers to a docket entry in the District Court. Citations to page numbers are to those automatically generated by the Court's electronic filing system, and which appear in the electronically generated header on the filed document.

"GX"        refers to a Government exhibit admitted into evidence at trial.

"PSR"       refers to the Pre-Sentence Report filed under seal with this Court.

"SA"        refers to the Supplemental Appendix supplied by the United States.

## STATEMENT OF THE ISSUES

I.    Did the District Court permissibly exercise its discretion by denying
      defendant Clifford Wares' request to sever for trial the charges involving his
      crimes against one of the juvenile victims from the charges involving the
      other juvenile victim, where Wares engaged in a protracted scheme to lure
      the victims to engage in sexual conduct with him, the evidence was easily
      compartmentalized by count, the District Court gave a proper limiting
      instruction, and severance would have resulted in the same evidence being
      presented at separate trials?

II.   Did the District Court plainly err or abuse its discretion with respect to
      Wares' claims that: (a) evidence of his statements to the victims about
      bestiality should have been excluded as unfairly prejudicial; and (b)
      evidence of an uncharged offense bearing Wares' distinctive *modus
      operandi* to prove identity was improperly admitted under Fed. R. Evid.
      404(b)?

III.  Did the District Court properly exercise its discretion by denying Wares'
      motion to be tried under a pseudonym?

IV.   Was the within-Guidelines-range sentence of life imprisonment for a serial
      sexual predator procedurally or substantively unreasonable?

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Charges were first brought against Wares in Passaic County, New Jersey Superior Court based on the conduct at issue in this appeal, but those charges were later "dismissed in favor of federal prosecution." PSR ¶ 77. The Government is unaware of any other related cases that are pending or resolved in this or any other Court.

## STATEMENT OF THE FACTS

### Introduction

Defendant Clifford Wares is a recidivist sexual predator who used social media to entice a fourteen-year-old girl to fellate him and to entice a thirteen-year-old girl to pose for pornographic images. When the victims sought to break free from Wares' control, he sent them murderous threats and, in one case, created numerous counterfeit Facebook accounts, in one instance posing as one of the victims online. Using those accounts, he falsely claimed that the victim had engaged in sexual acts with dogs and urged the victim's classmates to engage in sex with Wares, touting his sexual prowess. When he was arrested, police found a notebook with almost five hundred names of one of the victims' Facebook friends.

At sentencing, Wares threatened to escape from prison and continue to terrorize the two victims. By that time, he had been convicted of separately victimizing at least four other females over the course of twelve years. The District

Court imposed a within-Guidelines-range sentence of life imprisonment, calling

him "pure evil" and finding that he could not be rehabilitated.

**Wares' Crimes Against "Kaitlyn."**

Based on the evidence summarized below, a jury convicted Wares of (a)

enticing and coercing thirteen-year-old Kaitlyn (the juvenile victims' names were

not disclosed at trial), to engage in sexually explicit conduct for the purpose of

producing a visual depiction of that conduct, knowing that it would be transported

over the Internet, in violation of 18 U.S.C. § 2251(a) (Count One); (b) enticing and

coercing Kaitlyn to engage in criminal sexual activity, to wit: production of child

pornography, in violation of 18 U.S.C. § 2422(b) (Count Two); and (c)

transmitting through the Internet a threat to injure the reputation or property of

Kaitlyn with the intent of extorting a thing of value, in violation of 18 U.S.C.

§ 875(d) (Count Three).

In the summer of 2011, Kaitlyn was between the seventh and eighth grades

in West Milford, New Jersey. SA577-78. She had a passing familiarity with three

girls who were a year above her in school: Hannah, Katie, and Taylor. SA581-83,

586.

That summer, Kaitlyn received and accepted a Facebook "friend request,"

supposedly from Hannah, but actually sent by Wares. SA581. Wares had contacted

Kaitlyn through a bogus Facebook account he had created, using Hannah's name

and Facebook profile photograph. SA588-89. Posing as Hannah, Wares sent

Kaitlyn a Facebook message, stating that Hannah had a friend named Cliff who

was interested in Kaitlyn. SA581-84. Wares sent Cliff's telephone number to

Kaitlyn,[1] and she used it to exchange text messages with Wares. SA584. Wares

also communicated with Kaitlyn by email. SA588.[2]

When Kaitlyn told Wares that she was thirteen years old, Wares replied that

he was "very excited" about that, SA585-86, and asked her to send him

photographs of herself. SA593. After viewing the photographs, Wares told Kaitlyn

that she was "beautiful," "hot," and "sexy," and suggested that they should have a

"relat." SA589-91.[3] Wares repeatedly asked Kaitlyn to meet him, and offered to

drive to West Milford to pick her up. SA593.

---

[1] During his six month spree of crimes that were prosecuted in this case, Wares used "Tracfones," a mobile phone for which the customer prepays for future service and does not have to provide his name or contact information to the service provider. SA339, SA712-13, SA910-11. Wares used the same Tracfone as the subscriber for three different AT&T accounts, each with a different telephone number. SA910-11. As described below, federal investigators analyzed AT&T's business records and were able to link the approximate location of Wares' Tracfones to the times and locations of some of the charged crimes. SA1154-56, SA1413-16.

[2] Among the sexually suggestive email prefixes that Wares employed were "Cliffdog845" and "Cliffdog69." SA588. Wares had multiple Facebook accounts with "display names" of "Bob Sponge" and "Cliff Love." *Id.*

[3] In several of his captured communications, Wares distinctively abbreviated the word "relationship" to "relat." *E.g.*, SA190, SA357, SA361-62.

4

On August 9, 2011, Wares sent Kaitlyn a Facebook message from a user named "Bob Sponge," which read:

> Hey its cliff. U aint really in a relat. r u[?] Me and you are suppose to get 2gether and id like to know when cuz we been at this for 2 mos now n I gotta have u bad kaitlyn.

SA665-66, SA1358.

Wares followed up that message with another one, stating "Hey, when are you and me finally going to get together? I am going to get you with my dog and show you what an older man and a dog can do to your body." SA666, SA1358.

Meanwhile, Wares induced Kaitlyn to send him photographs and videos of her naked breasts and genitals. SA593-95. He then gave Kaitlyn explicit instructions for additional pornographic images. For instance, he induced her to use her cellphone camera to take a photograph of her inserting a hairbrush into her vagina. SA596. He also induced her to photograph herself with her legs spread apart while lying on her bed or the floor, and with her fingers inside her vagina. SA597. After receiving the pornographic photographs, Wares would tell Kaitlyn "how horny he was … and how much he wanted her." SA597. Wares emailed Kaitlyn photographs of his genitals, directed Kaitlyn to call him "Master," and variously referred to her as "Princess," "slut," and "whore." SA599-600.

In a series of Facebook messages on August 8-9, 2011, Wares, posing as Hannah, demanded that Kaitlyn have sex with Wares and his dog; claimed that

Hannah, Taylor and Katie had all had sex with Wares; and claimed that Hannah had sex with the dog and was willing to do so again in Kaitlyn's presence to encourage her to follow suit. SA640-44, SA1347-48.

On August 17, 2011, Wares left a voice mail message on Kaitlyn's cellphone, stating that he was "so horny" and directing her to "send me a picture of your p*ssy…. We gotta hook up this week before I move. I just gotta have that p*ssy." SA604-09, SA1352. Also that day, Wares sent Kaitlyn an email containing two photographs of Kaitlyn and the statements "ur pics I jackoff to" and "I gotta make my fantasy cum true n it starts with u Kaitlyn with us meetn up n f*ckn." SA608-12, SA1353, SA1370. In another voicemail message to Kaitlyn, Wares stated:

> I just wanna get my c*ck inside of you and make you feel good….
> I'm telling you the orgasm we're both gonna have is gonna be f*ckin
> so good. I mean it's the whole older c*ck younger p*ssy.

SA1354. Later that day, Wares sent Kaitlyn another email with photographs of his erect penis and left her another voice mail message, stating, "[p]rove to ur older sex master that ur a very horny teen needing c*ck. Take some pix of that horny teen p*ssy for ur sex master. Open it up for ur sex master." SA614-15. In response to those emails and voice mails, Kaitlyn sent photographs of her genitals to Wares via a text message. SA616.

Wares used additional fraudulent Facebook accounts he created to communicate with Kaitlyn. For instance, he created an account in the name of another girl from Kaitlyn's school, Adrianna. Using that account, Wares told Kaitlyn that she should be in a relationship with Wares and that Adrianna and two other classmates, Katie and Taylor, would be angry if she refused. SA617-21, SA820-22.[4] Occasionally, Wares was unable to keep his multiple unauthorized Facebook accounts straight and would send Kaitlyn Facebook messages from an unauthorized Facebook account that he had created in Kaitlyn's own name. SA661-62. For instance, on August 25, 2011, Wares sent the following Facebook message to Kaitlyn's actual Facebook account from the fraudulent Kaitlyn account:

> Hey this is taylor and katie. Text Cliff. We want you to get with cliff. Text him 845 636 9686. Call or text him now. Play with him. From what we heard hes been asking you to take pics of you nude. Just let him see you. Trust me hes a great f*ck."

SA661-63. As Taylor testified at trial, she never sent that message to Kaitlyn. SA774-75.

On August 18, 2011, Wares sent a text message to Kaitlyn's cellphone,

---

[4] Adrianna, however, had never given anyone permission to open a Facebook account in her name or use her photographs in a Facebook account. SA817-18. When she found out about the fraudulent Facebook account, she told her mother, who called the police. SA819.

stating "I wish you would seriously consider … trying dog sex. I know it freaks you out and I would never force you to do anything." SA659-60, SA1355. On September 11, 2011, Wares sent a message to Kaitlyn's Facebook account, stating: "Kaitlyn, let's f*ck…. Let's get that p*ssy f*cked rough f*cked hard and f*cked fast and long by me n my dog." SA635-36, SA667-68, SA1359. Wares also told the thirteen-year-old Kaitlyn that he wanted her to bear his child. SA625.

When Kaitlyn eventually declined to send Wares additional pornographic materials, he threatened to send the materials she had previously sent him to her father and her friends, whose Facebook addresses he knew because he had access to her Facebook "friend's list." SA601. Wares then sent a message to Kaitlyn using the bogus Hannah account, which purportedly was jointly written by Hannah, Katie, and Taylor, and threatened to expose Kaitlyn's pornographic photographs because she was ignoring Wares. SA601.

Eventually, Kaitlyn shut down her Facebook account and changed her telephone number to prevent Wares from contacting her and her friends, but Wares tracked her down and send her additional threatening messages. SA622-24. In late October 2011, Kaitlyn finally told her father about Wares, and together they went to the West Milford police station, reported Wares' crimes, and showed the police copies of Wares' incriminating Facebook messages to Kaitlyn. SA627-36, SA1366-69.

8

**Wares' Crimes Against Hannah.**

Based on the evidence summarized below, the jury convicted Wares of (a) using the Internet to entice and coerce fourteen-year-old Hannah to engage in criminal sexual activity, to wit: fellatio, in violation of 18 U.S.C. § 2242(b) (Count Four); (b) traveling in interstate commerce for the purpose of engaging in a sexual act with Hannah, in violation of 18 U.S.C. § 2423(b); and (c) transmitting over the Internet a threat to injure the reputation and property of Hannah with the intent to extort a thing of value, in violation of 18 U.S.C. § 875(d) (Count Six).

In May 2011, Hannah was an eighth grader living in West Milford. She had few friends and limited involvement in extracurricular activities. SA824, 828-29. At that time, she began communicating with Wares via Mocospace, an online social network site. SA826, SA831, SA835. When Hannah told Wares that she was only fourteen, he replied "I actually like that." SA833. Wares, who was then thirty-nine, told Hannah that he was only twenty-five years old. SA832.

A week or two after making contact online, Wares traveled from his home in Warwick, New York to meet Hannah near an elementary school in West Milford. SA502, SA834-35.[5] Wares arrived there in an old Nissan Frontier pick-up truck. SA838. Hannah got into the truck, and Wares drove to the Wawayanda State Park,

---

[5] Because Wares voluntarily absented himself from trial, SA278-82, Hannah identified a photograph of him during the trial. SA871-72, SA1450.

outside West Milford. SA839. They exited the truck and Wares led Hannah down a secluded wooded trail for ten minutes. SA840. After exiting the trail, Wares pulled down his pants, directed Hannah to get on her knees, pushed her head down, and caused her to perform fellatio on him. SA840-41.

Wares then directed Hannah to lay on her back on the ground, pulled down her pants, laid on top of her, and touched her vagina and breasts with his hands, mouth, and penis. SA841-42. They then walked back to Wares' truck, saying little to each other. SA842. When they reentered the truck, Wares forced Hannah's head into his lap and inserted his penis into her mouth again. SA843. Wares then drove back to the elementary school and left Hannah there. *Id.*

At that time, the lonely Hannah was eager to own a dog. SA847-48. Wares told Hannah that he was "really into" human-canine bestiality, which he acknowledged was "taboo." SA844-45. Wares sent Hannah an Internet link to a website devoted to sex between women and dogs, told her he would get her a dog from Craigslist, and wanted her to have sex with it. SA846-48.

When Hannah met Wares a second time at the elementary school, he again arrived in his pick-up truck, this time with a dog. SA849. Hannah removed the dog from the truck, told Wares she was taking it home to show her mother, departed, and did not return. SA851. Wares texted Hannah that night and demanded to know

why she had left him. SA852. He threatened to kill the dog, frightening Hannah. SA852-53.

On June 19, 2011, Wares, using the name Cliff Williams, sent Hannah a message on Facebook, stating "Hannah, its Cliff. Where u been, txt, call me, (845) 427-1668. How's the dog doing? Let's meet up today. I'm horny for you." SA864-65, SA1342. On June 21, Wares wrote to Hannah, "I need u in my life. Call me 845-427-1668." SA869-70, SA1343. On June 25, he wrote: "I know u must live behind the school that's on Henry Road. Be outside ur house cuz I determined to find my luv n that's u." SA870, SA1343.

On July 9, Wares contacted Hannah again via Facebook and stated:

> Hey, it's Cliff. Hannah, where ya been. Anyway has ur dog shown any interest in trying to mount u…. I miss that day we went to Waywayanda when I ate u out. U had the best tasting p*ssy I ever had. Would like more of it. Please txt me 845-636-8241. Email me at dogsex845@yahoo.com.

SA870-71, SA1343.[6]

On July 10, Wares wrote to Hannah:

> Did u ever get the dog to mount u? …. I wanna try suckn ur dogs c*ck with u. I'm serious. I wanna try that n try eating u out as he's f*ckn u.

SA873-74, SA1345. Wares also sent Hannah an email with a photo of the head of a small dog next to a naked man's penis. SA846-47, SA1449.

---

[6] Wares initially used the display name "Cliff Williams" when sending these messages, then changed to "William Christopher McDonald." SA871, SA1343.

When Hannah declined to respond to these entreaties, Wares altered his tone from pleading to threatening. On July 19, Wares sent Hannah a Facebook message from the bogus Adrianna Facebook account he had created:

> Your f*ckn going down bitch. Im gettn the dog back or im killing it. I know where to find u now. If u don't meet me then expect a dead dog.

SA817, SA880-82, SA1345.

Meanwhile, Wares used the unauthorized Hannah Facebook account he had created to contact two other West Milford girls named Katie and Taylor. SA733-35. That summer, Taylor accepted a Facebook friend request, supposedly from Hannah, but actually from Wares. SA735-37. Wares, posing as Hannah, told Taylor that she should meet Hannah's nineteen-year-old friend, "Cliff," and sent Taylor Cliff's telephone number. SA737-38.

On August 2, 2011, Taylor received a series of Facebook messages from Wares, again purporting to be Hannah. SA767. Wares encouraged Taylor to text "Cliff" at telephone number 845-636-9686. SA770, SA1361-65. Taylor began to text with Wares, and he told her that he wanted to "hang out" with her and Katie. SA739. Posing as Hannah, Wares sent Taylor another message, extolling Cliff's sexual prowess, and stating that Cliff "wants to get with all girls our age … and have sex." SA772, SA1364.

Wares arranged for Taylor and Katie to meet him at Brown's Point Park in West Milford, and arrived there in his pick-up truck. SA740.[7] After buying alcohol for the two girls, Wares showed them photographs of bestiality on his cellphone, causing Taylor to "freak[] out." SA742**.**

Later, again posing as Hannah on Facebook, Wares told Taylor that an "older guy" "got me into dogsex," which had the advantages of preventing pregnancy and "std." SA766, SA768, SA1362. "Hannah" told Taylor that Hannah's dog had "f*cked [her] an hr straight" and gave her multiple orgasms. SA768, SA1362. "Hannah" also extolled sex with "older guys." *Id.*

In August 2011, Hannah saw Facebook messages, purportedly from some of her classmates, stating that she was encouraging them to have sex with dogs. SA853-54, SA861-62. Hannah realized that Wares had established a fake Facebook account in her name, and warned the acquaintances that the account was fraudulent. SA854-55, SA859-61, SA860-61, SA872. Wares then created additional phony Facebook accounts, and warned Hannah that he would eventually find her. SA862-64. Hannah became so scared of Wares that she revealed her troubles to her mother. SA889-90.

---

[7] Like Hannah, Taylor identified at trial a photograph of the absent Wares as the person she met at Brown's Point. SA734, SA1450.

On August 10, after Hannah caused the fraudulent Hannah Facebook to be deleted, Wares sent her another message from the bogus Adrianna account:

> U think u can have my Hannah profile deleted. Think again cuz Im makin up 5 more 2 day, so f*ckoff u fat f*ckn c*nt.

SA882, SA1345. On October 10, Wares sent another message to Hannah, directing her to "[m]eet me or ppl will know bout wat ur doin to sparky [Hannah's dog] sexually." SA886, SA1346.

### The Arrest of Wares on November 3, 2011.

After Kaitlyn and her father delivered copies of Wares' incriminating communications to the police, officials of the Passaic County Sheriff's Office launched an investigation. SA461-62. On November 2, 2011, they arranged for Kaitlyn to have a covertly recorded telephone conversation with Wares. SA433. During that conversation, Wares told Kaitlyn that he was living in a tent in a park in Monroe, New York, and emailed her photographs of himself and the campsite. SA445-47, SA1360-61, SA1391-97. One of the photographs was a "selfie" taken by Wares in front of his tent. SA447, SA468, SA506, SA1391. Investigators determined that the campsite was located inside Smith Cove Park in Monroe, and enlisted the assistance of the New York State Police. SA461-62.[8]

---

[8] Although not disclosed to the jury, the Sheriff's Office transmitted to the State Police an active arrest warrant for Wares issued by a New York State court in another case. SA81-83.

14

On November 3, 2011, State Police officials arrested Wares in Smith Cove Park. SA469-72. During a search of his tent, they discovered a notebook containing a handwritten list of approximately 500 names of Kaitlyn's Facebook friends. SA473, SA969-71, SA1417-34.[9] The handwriting featured numerous instances of a distinctive lowercase "i" dotted with a large open circle. SA1417-34. The police also found a piece of paper with addresses and monthly rent for two apartments. SA486, SA1435. Wares had told Kaitlyn that he wanted her to live with him after he acquired an apartment. SA429-32, SA449, SA1388-89.

## STATEMENT OF THE CASE

On March 3, 2015, the United States Attorney's Office for the District of New Jersey adopted the state court charges against Wares, and filed a criminal complaint in the United States District Court for the District of New Jersey. DNJ 15-570 (ES), D.E.1. On November 3, 2015, a federal grand jury sitting in Newark, New Jersey returned a six-count indictment, charging Wares with the crimes described above. D.E.11. The case was assigned to the Honorable Esther Salas, U.S.D.J.

Prior to trial, the District Court denied Wares' motion to sever the charges into two groups for separate trials, D.E.41, and granted in part the Government's

---

[9] The jury was not informed that police also discovered a knife, handcuffs, latex gloves, and duct tape inside the tent. SA66-68.

motion *in limine* to admit evidence of some of Wares' uncharged criminal conduct pursuant to Fed. R. Crim. P. 404(b), *id.* Following a trial, the jury convicted Wares on May 17, 2016 of all six counts. D.E.57&58.

Following a sentencing hearing on June 27, 2016, the District Court imposed a within-Guidelines-range sentence of life imprisonment. D.E.67. This timely appeal followed. D.E.68.

## SUMMARY OF ARGUMENT

*First*, the District Court permissibly exercised its discretion by denying Wares' motion to sever for trial the three counts charging offenses against Kaitlyn from the three counts charging offenses against Hannah. The two groups of charges, although similar, were not identical. The jury could have readily compartmentalized the evidence for each of the counts, given that both of the victims testified at the joint trial and identified and described the deeply incriminating Facebook messages and emails that Wares directed at each of them. Finally, there was a substantial overlap of evidence that would have been presented at separate trials. As the District Court properly found, all of those factors militated strongly against severance.

*Second*, the District Court did not commit evidentiary error. It did not plainly err or abuse its discretion by admitting intrinsic evidence of Wares' enticement of the juvenile victims to engage in bestiality, which Wares now claims

was unduly prejudicial under Fed. R. Evid. 403. But Wares did not preserve below his Rule 403 claim regarding his statements about bestiality directed to Kaitlyn and Hannah, and has not even attempted to demonstrate plain error. Even assuming that Wares preserved such a claim regarding statements he directed against another juvenile girl, the District Court permissibly exercised its discretion by weighing the strong probative value of the evidence—which powerfully proved one of the counts—against its prejudicial effect, excising a portion of the challenged evidence, and admitting the rest.

Nor did the District Court abuse its discretion by admitting evidence, pursuant to Fed. R. Evid. 404(b), that two years before the charged crimes, Wares committed substantially similar crimes against another juvenile girl. Given Wares' defense of misidentification, that evidence was properly admitted as *modus operandi* to prove Wares' identity as the perpetrator of the charged crimes. And given the overwhelming evidence of guilt, any error in the admission of evidence was harmless.

*Third*, the District Court properly denied Wares' request to conceal his name from the jury. Wares' name was important evidence that linked him to the incriminating online communications with the victims. Wares' speculation that the jurors would disregard the Court's repeated admonitions not to conduct any

independent online research about the case cannot demonstrate an abuse of discretion.

*Fourth*, Wares' perfunctory challenge to his sentence of life imprisonment, improperly relying on his filings in the District Court, does not merit this Court's review. And in any event, the District Court's very thorough explanation for its sentence would defeat any claim of procedural error or substantive unreasonableness.

## **ARGUMENT**

### I.   **THE DISTRICT COURT PERMISSIBLY EXERCISED ITS DISCRETION BY DENYING WARES' SEVERANCE MOTION.**

**Standard of Review**: **"We review whether a motion for severance to prevent prejudice should have been granted pursuant to Rule 14 under an abuse of discretion standard."** ***United States v. Walker*, 657 F.3d 160, 170 (3d Cir. 2011).**

Wares concedes, DB12, that, pursuant to Fed. R. Crim. P. 8(a), Counts One through Three (charging Wares' crimes against Kaitlyn) were properly joined in a single indictment to Counts Four through Six (charging Wares' crimes against Hannah). He claims, however, that the District Court abused its discretion by not severing the two sets of charges for trial. A ruling on a severance motion is reviewed only for an abuse of discretion. *United States v. Walker*, 657 F.3d 160, 170 (3d Cir. 2011). There was no abuse of discretion, which occurs only when the

challenged ruling was "arbitrary or irrational." *United States v. Green*, 617 F.3d

233, 251 (2010).

"Defendants seeking a severance bear a 'heavy burden' and must

demonstrate not only that the court would abuse its discretion if it denied

severance, 'but also that the denial of severance would lead to clear and substantial

prejudice resulting in a manifestly unfair trial.'" *United States v. Lore*, 430 F.3d

190, 205 (3d Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 539

(1993)). "A severance should be granted 'only if there is a serious risk that a joint

trial would compromise a specific trial right…, or prevent the jury from making a

reliable judgment about guilt or innocence.'" *United States v. Bornman*, 559 F.3d

150, 156 (3d Cir. 2009) (quoting *Lore*, 430 F.3d at 205). And "even if there were

some risk of prejudice, … [it] can be cured with proper instructions, and 'juries are

presumed to follow their instructions.'" *Zafiro*, 506 U.S. at 540 (quoting

*Richardson v. Marsh*, 481 U.S. 200, 210 (1987)).

Here, Wares does not identify a specific trial right that was compromised by

the single trial. Rather, he claims that the similar (but far from identical) charges

involving the two victims prevented the jury from "compartmentalizing" the

evidence that was relevant to each count.[10] Among the several defects in this claim

---

[10] In support of his claim, Wares relies chiefly on a decision from a state
intermediate appellate court, DB14, and does not identify a single decision from a

is that Wares has the facts wrong. He contends that the two sets of charges were "almost identical … (except for the sole child pornography charge of Count 1, pertaining to Kaitlyn)." DB13. This ignores the Count Five charge that Wares traveled across state lines to engage in unlawful sexual conduct with Hannah. That charge was proved by the singular and striking testimony of Hannah that, the first time she met Wares, he took her to a secluded area in Wawaynda State Park and engaged in fellatio and cunnilingus with her. There is no possibility that the jurors would have been unable to compartmentalize that evidence, as Kaitlyn testified that she never met Wares in person. Indeed, Wares concedes as much. DB15.

As Wares also concedes, DB13, he was convicted of enticing Kaitlyn, but not Hannah, to send him pornographic images of herself. That charge was proved by Kaitlyn's riveting testimony about how Wares' directed her to contort herself to produce his preferred pornographic images using her cellphone. There was no similar evidence involving Hannah. Additionally, although Wares discussed bestiality with both victims, he gave only Hannah an actual dog, urged her to have sex with it, then threatened to kill it.

More generally, both Hannah and Kaitlyn each testified and identified and described Wares' incriminating messages that were directed at them. To be sure,

---

federal appellate court that reversed the denial of a Rule 14 severance motion. Such decisions appear to be as rare as hen's teeth.

Wares caused the victims to be linked together by sending Kaitlyn messages from Hannah's bogus Facebook account. But that evidence was easily compartmentalized because Wares sent Facebook messages to Kaitlyn that were purportedly from Hannah, but did not send Hannah Facebook messages that were purportedly from Kaitlyn.

Wares' claim also suffers from illogic. While claiming that severance was necessary because he committed similar crimes against both victims, DB13, he then asserts that "any semblance of compartmentalization was erased since the evidence regarding the nearly identical charges against the two victims was different." DB15. As shown above, it was the clear demarcation of the "different evidence" that allowed the jury to readily compartmentalize the evidence that was relevant to a particular count.

Wares also complains because "each teenage victim … bolstered and corroborated the other." DB14. But the testimony of mutually corroborating witnesses has no bearing on whether a severance should be granted. "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540. Instead of supporting his claim with logic and authority, Wares relies on overwrought, *ipso facto* assertions. *E.g.*, DB13 (joinder "was wildly prejudicial since there was no way anyone could compartmentalize assessing the nearly identical charges against each of the two

victims"); DB14 ("[T]he prejudicial effect of joinder was monumental and could not be rectified by any limiting instruction.").

The charges here, proved mostly by the first-hand accounts of the two victims and copies of the self-incriminating statements that Wares sent them, were not so convoluted or duplicative that the jury could not compartmentalize the relevant evidence. Severance was not warranted merely because of the similarity of some of the charges in the two sets of counts. *See United States v. Brunson*, 516 F. App'x 154, 157 (3d Cir. 2013) (not precedential) (severance of six "straightforward" armed robbery charges was properly denied where the "the District Court expressly instructed the jury to compartmentalize the evidence").

Moreover, as the District Court accurately found, and Wares does not dispute, severance was particularly unwarranted here, because "it is likely that the same evidence and the same witnesses would be heard by the jury in both cases, if they were to be severed." SA187. Joint trials are favored "where the same evidence would be presented at separate trials." *United States v. Console*, 13 F.3d 641, 655 (3d Cir. 1993). As shown in the Statement of Facts and as further explained in the following section of this brief, Wares' crimes against both victims were committed according to a distinct *modus operandi*. As such, evidence of any of the criminal acts involving that *modus operandi* would be admissible in separate trials in order to prove that Wares, and not some other person, was the perpetrator. *See United*

*States v. Arrington*, 159 F.3d 1069, 1072 (7th Cir. 1998) (affirming denial of severance; "had Arrington gone to trial on only one robbery at a time, much of the evidence about the other bank jobs would have been admissible to prove his identity as the robber under Rule 404(b)"). That being so, severance would have required both of the juvenile victims to testify twice about the deeply traumatizing crimes inflicted on them by Wares. That was an additional consideration that militated strongly against severance. *See United States v. Page*, 657 F.3d 126, 130 (2d Cir. 2011); *United States v. Mir*, 525 F.3d 351, 357 (4th Cir. 2008).

The District Court also minimized any unfair spill-over by instructing the jury, consistent with this Court's model instruction, that each count was a separate offense to be decided separately.[11] Such instructions can insure that the jury "compartmentalize[s] the evidence presented and consider[s] each count separately and independently." *Bornman*, 559 F.3d at 156. Wares' severance claim fails.

---

[11] *Compare* SA1085-86 *with* Third Circuit Model Instruction (Criminal), 3.12.

## II.   THE DISTRICT COURT DID NOT PLAINLY ERR OR ABUSE ITS DISCRETION BY ADMITTING THE CHALLENGED EVIDENCE.

**Standard of Review: Preserved objections to the admission of evidence are reviewed for an abuse of discretion, *United States v. John-Baptiste*, 747 F.3d 186, 211 (3d Cir. 2014), but unpreserved claims are reviewed for plain error, *United States v. Rivas*, 493 F.3d 131, 136 (3d Cir. 2007).**

Wares claims that the District Court abused its discretion by admitting intrinsic evidence that, as a central aspect of his scheme to lure Kaitlyn and Hannah to engage in unlawful sexual conduct, he solicited them to engage in sex with dogs. Acknowledging that some of that evidence was properly admitted as intrinsic to the charged crimes, Wares contends that the amount of evidence regarding his solicitation of bestiality was excessive and unfairly prejudicial. Wares failed to preserve his objections to most if not all of that evidence, and has not even attempted to demonstrate plain error. Even if he preserved his "unduly prejudicial" objection to a small part of that evidence, he has failed to demonstrate that the District Court abused its discretion, particularly after the Court removed the most inflammatory aspects of the challenged evidence.

Wares also contends that the District Court abused its discretion by admitting evidence of his efforts to solicit unlawful sexual conduct from another minor a mere two years before he committed the charged crimes in 2011, using a range of distinctive tactics that mimicked the tactics he employed against Kaitlyn and Hannah. Because Wares' defense in this case was "mistaken identity," the

District Court permissibly admitted that evidence under Fed. R. Evid. 404(b) to prove Wares' *modus operandi*.

Finally, even if the District Court committed evidentiary error, it was harmless in light of the overwhelming evidence of Wares' guilt for all of the charged crimes.

### A. The District Court Permissibly Exercised Its Discretion by Admitting Evidence of Wares' Efforts to Solicit the Minor Victims to Engage in Bestiality.

### 1. Wares Failed to Preserve His Rule 403 Objection to His Statements to Hannah and Kaitlyn About Bestiality.

Wares contends that he "repeatedly objected to … toxic evidence" of "[d]etailed and graphic testimony about bestiality, from Kaitlyn, Hannah, and Taylor" that "permeated the trial." DB20. He contends that this evidence should have been excluded pursuant to Fed. R. Evid. 403.[12] DB19-21.

But Wares did not object to the admission of his bestiality statements to Kaitlyn and Hannah, evidence that was *intrinsic* to his charged crimes against those girls, on Rule 403 grounds. Indeed, the trial transcript pages he cites, DB20

---

[12] That rule states:

> The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

(citing A14-17 and A28-30), reference only Wares' objections to *extrinsic*

evidence of Wares' uncharged crimes that the Government offered pursuant to

Rule 404(b). And in a ruling that Wares did not challenge below or on appeal, the

District Court determined that Wares' communications with Taylor and Katie were

also intrinsic to the charged crimes. SA213. Indeed, counsel later conceded that

evidence regarding his statements about bestiality to Hannah and Kaitlyn were

admissible. A63-64 ("If this was the real Hannah that was being corresponded to

[the challenged emails came from Wares' fraudulent Hannah Facebook account,

A64, GX103a, SA1362-65], or Kaitlyn who testified earlier, then I would have in

[sic] basis to say it shouldn't come in because those are the crimes.").

Consequently, Wares' claim that he objected to intrinsic evidence of his statements

about bestiality to Hannah and Kaitlyn is refuted by the record.

### 2.    Wares Cannot Establish Plain Error as to Those Statements.

That being so, Wares' Rule 403 challenges on appeal to the admission of his

bestiality statements to Hannah and Kaitlyn, not preserved below, can be reviewed

only for plain error. *United States v. Boone*, 279 F.3d 163, 188 (3d Cir. 2002)

(unpreserved Rule 403 claim). Wares cannot demonstrate that admission of that

evidence was not only an abuse of discretion, but error that was "clear and

obvious." *United States v. Fulton*, 837 F.3d 281, 294 (3d Cir. 2016). *See United

States v. DeMuro*, 677 F.3d 550, 562 (3d Cir. 2012) (any error was not plain

"because it is not 'clear or obvious'"). Indeed, Wares concedes that "Hannah's actual encounter with Wares and the dog was relevant and intrinsic to" Count 6. DB22. But all of Wares' statements to Hannah regarding bestiality were also "relevant and intrinsic" to prove that he attempted to "persuade, induce, entice, and coerce" her to "engage in [unlawful] sexual activity." *See* D.E.11, Count Four. Wares gave Hannah a dog then repeatedly encouraged her to have sex with it, SA849-50, SA871, SA1343-44. He later encouraged her to have sex with him and the dog together. SA874, SA1344. Regardless of whether enticing a minor to have sex with a dog is unlawful, it was certainly unlawful for the thirty-nine year-old Wares to use the Internet to entice fourteen-year-old Hannah to have sex with him. *See* 18 U.S.C. § 2422(b).

The evidence was also "relevant and intrinsic" to prove that Wares traveled from New York to New Jersey "for the purpose of engaging in illicit sexual conduct" with Hannah, *see* D.E.11, Count Five, 18 U.S.C. § 2423(b), because he gave the dog to Hannah in order to induce her to have sex with him and the dog jointly. Similarly, Wares' statements to Kaitlyn, encouraging her to have sex with a dog, SA625-26, were highly relevant to prove that he "entice[d]" her "to engage in [unlawful] sexual activity." *See* D.E.11, Count Two. As with Hannah, Wares later tried to convince Kaitlyn to have sex jointly with him and his dog. SA635-36, SA667-68, SA1358.

Because Wares did not lodge a Rule 403 objection to this evidence, the District Court had no opportunity to conduct the kind of on-the-record balancing that is required under that Rule. *Cf. United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (*en banc*) (plain error review applies if a defendant fails to "raise any procedural objection … at the time the procedural error is made"). But on plain error review, Wares cannot show (indeed, he does not even try) that admission of that evidence was error that was plain and injured Wares' substantial rights. Although Wares' efforts to induce Hannah and Kaitlyn to engage in sex with a dog were deeply offensive, the District Court could have permissibly concluded that its unfairly prejudicial impact did not *substantially* outweigh its probative value. *See United States v. Duka*, 671 F.3d 329, 351 (3d Cir. 2011) (district court permissibly exercised its discretion by admitting, over a Rule 403 objection, redacted videos of jihadist beheadings that defendants repeatedly viewed, which were relevant to prove their state of mind); *Gov't of Virgin Islands v. Albert*, 241 F.3d 344, 348 (3d Cir. 2001) (district court permissibly admitted, over a Rule 403 objection, a videotape showing the gruesome murder scene after redacting the "opinionated" audio narration). Wares has failed to demonstrate that admission of his bestiality statements to Kaitlyn and Hannah was plainly erroneous.

### 3. Wares' Rule 403 Challenge to His Statements to Taylor About Bestiality Fail to Establish Plain Error or an Abuse of Discretion.

Later in the trial, Wares' objected to the admission of GX103a, a series of

Facebook messages from Wares to Taylor. A62. Although his initial objection was

irrelevance, A62-63, counsel also complained that the evidence amounted to

"piling on." A63. The Government and the District Court agreed that the final page

of that exhibit would be redacted as "cumulative" under Rule 403. A64-65.

Wares then argued that GX103a should not be admitted as proof that Wares

was "ruin[ing] Hannah's reputation," as charged in Count Six, claiming that Wares

was instead trying to lure Taylor into having sex with dogs. A65-66. *See also* A67

("[I]t is a far cry from, 'I am going to tell everybody about Hannah is having

sex'…. He is doing it in a way to tell this Taylor, 'this is great. You will love it.'").

In other words, the evidence was not relevant to prove Count Six. The Government

responded that the emails from the counterfeit Hannah Facebook account to

Taylor, stating that Hannah had engaged in bestiality, was "direct evidence of

Count 6." A66. The Court agreed, A66-67 ("[I]t is intrinsic evidence as to his

carrying out a threat of informing Hannah's friends that she had sex with dogs."),

and overruled the objection, A68.

Thus, the only Rule 403 objection to evidence about bestiality that Wares

arguably preserved was to admission of GX103a, and the Court responded to that

objection by striking a portion of the exhibit. Thereafter, Wares did not argue that the Court's response to his objection was insufficient, but moved on to other, non-Rule 403 objections to the exhibit.

It is far from clear that—after the District Court redacted GX103a in response to Wares' "piling on" objection, and Wares thereafter expressed no dissatisfaction with the Court's ruling—Wares preserved a Rule 403 challenge to the portions of Exhibit 103a that were not excluded, and that he is now entitled to a new trial as a result. *See generally Gov't of Virgin Islands v. Charleswell*, 24 F.3d 571, 577 (3d Cir. 1994) (declining to grant a new trial based on prosecutor's allegedly improper summation remarks, where the trial court gave defendant the curative instructions that he requested, and defendant did not thereafter move for a mistrial). *Accord, United States v. Riley*, 621 F.3d 312, 339 (3d Cir. 2010).

But even if Wares preserved a Rule 403 objection to the admitted portions of GX103, he has failed to demonstrate an abuse of discretion. "Rule 403 is a balancing test, and like any balancing test, the Rule 403 standard is inexact, requiring sensitivity on the part of the trial court to the subtleties of the particular situation, and considerable deference on the part of the reviewing court to the hands-on judgment of the trial judge." *United States v. Vosburgh*, 602 F.3d 512, 537 (3d Cir. 2010) (affirming admission of defendant's possession of "child erotica," which was relevant to disprove that his attempt to access an online child

30

pornography message board was accidental). And a discretionary ruling that admits evidence over a Rule 403 objection is entitled to particular deference. "Evidence should be excluded under Rule 403 only sparingly since the evidence excluded is concededly probative." *Spain v. Gallegos*, 26 F.3d 439, 453 (3d Cir. 1994). "As the text of [Rule 403] indicates, evidence that is otherwise relevant and admissible may only be excluded if the probative value of the evidence is substantially outweighed by its prejudicial effect." *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 664 (3d Cir. 2000) (*en banc*). *See generally United States v. Bergrin*, 682 F.3d 261, 279 (3d Cir. 2012) (reversing the exclusion of *extrinsic* evidence that was "highly probative of [defendant's] guilt").

As the Government explained, GX103a—containing copies of Wares' messages to Taylor (using the counterfeit Hannah Facebook account) that Hannah had engaged in sex with dogs—was highly probative and intrinsic evidence to prove that Wares had carried out his threat to use the Internet to destroy Hannah's reputation, as alleged in Count Six. Although evidence that Wares' references to bestiality in those messages was inflammatory, the unfair prejudice was mitigated by the fact that his other statements about bestiality were properly admitted. *See United States v. Patterson*, 68 F. App'x 351, 354 (3d Cir. 2003) (not precedential) (affirming admission, over Rule 403 objection, of evidence that defendant's nephew was a felon; it was "extremely unlikely that the jury was substantially

31

swayed by" that evidence "since the jury was already aware that Patterson

associated with [other] convicted criminals"). Admission of that evidence did not

violate Rule 403. *See United States v. Romero*, 189 F.3d 576, 587-88 (7th Cir.

1999) (probative value of extrinsic evidence that the defendant had previously used

the same seduction techniques on other boys and expressed a desire to have sex

with them was not outweighed by the prejudicial effect).[13]

---

[13] The closest authority that supports Wares' claim is *United States v. Cunningham*, 694 F.3d 372 (3d Cir. 2012), which Wares does not cite in his brief. There, this Court held that admission of a deeply sadistic video of child sexual abuse over a preserved objection violated Rule 403, particularly because the trial judge failed to even look at the videos before approving their admission. *Id.* at 387. But here, Judge Salas scrupulously reviewed GX103a before ruling, and redacted the most objectionable portion of the exhibit. SA706. *See United States v. Finley*, 726 F.3d 483, 493 (3d Cir. 2013) (distinguishing *Cunningham* on that ground). Although some of Wares' *oral* descriptions of bestiality in GX103a that were admitted into evidence were likely to have offended the jurors, they pale in their prejudicial impact to the horrific *visual* depictions of sadistic torture of very young children that should have been excluded in *Cunningham*. *See* 694 F.3d at 381-83.

And unlike the photographs at issue in *Cunningham*, which had little or no probative value in light of other evidence that was admitted, *id.* at 391, Exhibit 103a was direct evidence supporting the charge in Count Six that Wares intentionally threatened to ruin the reputation of Hannah by sending emails to her acquaintances at school that she was enjoying sex with a dog and encouraging other minors to follow suit. *See Finley*, 726 F.3d at 493-94 (although "some of the videos were extremely disturbing and absolutely prejudicial, their presentation was not unfairly prejudicial to the point where unfair prejudice substantially outweighed probative value").

### 4.    Any Error Was Harmless.

Even if admission of a portion of GX103a was an abuse of discretion, it was harmless, given the overwhelming evidence of guilt. When assessing whether non-constitutional error such as that alleged here is harmless, this Court must decide whether "there is a high probability that the error did not contribute to the judgment," resulting in a "sure conviction that the error did not prejudice the defendant." *United States v. Steiner*, 847 F.3d 103, 113 (3d Cir. 2017). Such a "sure conviction" exists here. Not only did Hannah, who had protracted opportunity to observe Wares when he forced her to engage in fellatio and cunnilingus at Wawaynda State Park, identify him as the perpetrator, but the email and Facebook messages that Wares sent to Hannah after that incident corroborated her account. SA870-71, SA1343 (describing the sexual encounter at the park).

In addition, the Government presented extensive cell site location evidence for the mobile phones used by Wares when he committed the charged crimes in this case.[14] That evidence, in turn, linked Wares to the charged crimes. For instance, as a baseline number, between June 1 and August 15, 2011, a mobile

---

[14]  Wares' mobile phone accounts were tied to the following call numbers: (845) 427-1668, which was active between May 9 and June 26, 2011; (845) 636-8241, which was active between June 26 and July 20, 2011; (845) 636-9686, which was active from July 20 to December 13, 2011; and (845) 537-6384, which was active from September 7, 2011 to February 9, 2012. SA713-16, SA1397-1408.

phone linked to three of the four AT&T accounts for which Wares was the

subscriber accessed a single cell phone tower located close to Wares' residence in

Warwick, New York over 6500 times. SA1413. On June 17, 2011, likely the date

when Wares first met Hannah at the Upper Greenwood Elementary School, the

mobile phone tied to one of Wares' accounts repeatedly accessed the AT&T tower

near that school. SA1414. On July 18, 2011, likely the date when Wares delivered

Sparky the dog to Hannah, a mobile phone tied to a different Wares account

accessed that tower. *Id.* Between August 2 and 3, 2011, likely the date when Wares

met Taylor and Katie in Brown's Point Park, a mobile phone tied to one of Wares'

accounts repeatedly accessed a cell phone tower close to the park. SA1415. On

November 2, 2011, the day before Wares was arrested, his mobile phone sent 84

text messages and ten telephone calls to Kaitlyn using two different sectors of an

AT&T cell phone tower close to Smith Cove Park. SA1416.

Additionally, from inside Wares' tent in Smith Cove Park at the time of his

arrest, police seized the small notebook in which the names of Kaitlyn's Facebook

friends were written in Wares' distinctive handwriting with the circles dotting the

"i." SA967-71, SA1417-34, SA1436. Wares' possession of that notebook

powerfully corroborated Kaitlyn's testimony and other evidence that Wares was

the author of the damning Facebook messages and emails to Kaitlyn. And Wares'

state court probation officer, who saw Wares on a daily basis for a protracted

period, SA496, identified Wares as the person who took the "selfie" photograph

and emailed it to Kaitlyn on November 2, 2011. SA506. The probation officer also

identified Wares' voice from the consensually recorded telephone call between

Wares and Kaitlyn. SA508-09, SA512, and identified Wares' handwriting, with its

distinctive lower case "i." SA498.

The Government also presented forensic evidence that linked Wares to the

incriminating Facebook messages. A single mobile device accessed both Wares'

"Cliff Love" and the fraudulent Adrianna Facebook accounts. SA403, SA1437-48.

Likewise, a single mobile device accessed the fraudulent Adrianna and the

legitimate Kaitlyn Facebook accounts. SA404.

Given all of that undisputed forensic evidence, any error in the admission of

portions of GX103a was harmless. *See United States v. Bailey*, 840 F.3d 99, 124

(3d Cir. 2016) (admission of a video of an actual murder violated Rule 403, but

was harmless because "the government presented abundant evidence [establishing]

overwhelming evidence of guilt").

> **B.    The District Court Permissibly Admitted Extrinsic Evidence of Wares' *Modus Operandi* to Prove His Identity as the Perpetrator of the Charged Crimes.**

Wares' contention that the District Court abused its discretion by admitting

evidence of his uncharged [in this case] criminal conduct in 2009 also fails. As the

Government anticipated before trial, SA125, SA188, Wares' trial defense was that,

although Hannah and Kaitlyn had been victimized as charged in the indictment, someone other than Wares was the culprit. The defense highlighted that none of the prosecution witnesses observed Wares sending the deeply incriminating Facebook messages, emails, or voice mails, and that persons other than Wares could have gained access to his various online accounts and telephones. SA1166-74 (defense summation).

To rebut Wares' misidentification defense, the District Court granted the Government's pretrial motion to admit evidence at trial pursuant to Fed. R. Evid. 404(b) of two instances of Wares' uncharged criminal conduct: his criminal sexual abuse of another juvenile girl in Orange County, New York in 2009, and his criminal sexual abuse of yet another girl in Ulster County, New York in 2013. SA189-211; D.E.31, 23-30. At trial, however, the Government introduced only the evidence regarding Wares' 2009 conduct.

**1.    Evidence Regarding Wares' 2009 Criminal Conduct.**

The only evidence the Government presented at trial regarding Wares' 2009 criminal conduct was his signed confession and the testimony of the New York State Police investigator who took it. SA682-83, SA1451-56. In that confession, Wares admitted that:

> ➢ he had communicated with the minor victim, fifteen-year-old "Lindsay," using a "Myspace" online account with the profile name, "cliffdog845," SA684;

➢ while communicating with Lindsay online, Wares asked her to meet him, and asked her "if it was all right to perform oral sex on her," SA685-86;

➢ Wares admitted that, without Lindsay's permission, he had created online profiles that appeared to have been created by Lindsay, using her name and photographs, and included photographs of Lindsay's friends because "her pictures were already up, I just cut, copied, and pasted" them, SA687-90;

➢ Wares admitted that on March 22, 2009, he wrote to Lindsay and told her that she "just don't [] get it. Either way I win…. Do I need you? No, I already … talking to one of your classmates, and hooking up with her. The point to this is now f*cking revenge. You promised to meet me. You refused to do so. Now I am taking you down with a little help from your own classmates." SA689-90.

Wares signed the document memorializing his confession and a copy of the Myspace message he sent to Lindsay, using the telltale open circle as the dot on the "i" in his first name. SA691, SA1451-57. The jury was not informed that Wares had plead guilty in New York state court in May 2010 to a felony charge of coercion in the first degree (instilling a fear of injury to a person or damage to property), in violation of N.Y.P.L. 135.65, and was sentenced to five years of probation.

### 2.     The Extrinsic Evidence Was Permissibly Admitted to Prove *Modus Operandi*.

Wares effectively admits that evidence about the 2009 crimes was "additionally relevant to identity." DB24. He claims, however, that it was "extremely prejudicial and unnecessary since both Kaitlyn and Hannah" had

testified that Wares' "fabricated Facebook accounts, lured them for sexual acts, and … threatened them when they did not comply." *Id.* In other words, there was sufficient *modus operandi* evidence relating to the two sets of charged crimes that *modus operandi* evidence relating to the uncharged crimes was cumulative.

If Wares' claim is limited to a charge of cumulativeness, it can be readily rejected. The claim ignores the fact that Wares voluntary *confessed* to his 2009 criminal conduct, while claiming at trial that someone other than him committed the charged crimes in 2011. Consequently, the 2009 evidence was powerful proof of Wares' identity as the perpetrator of the charged crimes in a way that other identification evidence was not. "[T]he defendant's own confession is probably the most probative and damaging evidence that can be admitted against him." *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (quoting *Bruton v. United States*, 391 U.S. 123, 139-140 (1968) (White, J., dissenting)). Again, the District Court did not abuse its discretion by concluding that the probative value of the challenged evidence was not substantially outweighed by its probative value.

But even if Wares' challenge is broader, it still fails. Wares is certainly correct that evidence about his 2009 crimes was probative of his identity. Fed. R. Evid. 404(b) permits the admission of evidence of the defendant's uncharged criminal conduct to prove, *inter alia*, "identity." Fed. R. Evid. 404(b). "The most common form of evidence offered to prove identity is *modus operandi* evidence."

38

*United States v. Smith*, 103 F.3d 600, 603 (7th Cir. 1996). *Modus operandi*

evidence, in this context, is a distinctive method of committing a particular kind of

crime. *See United States v. Mathis*, 264 F.3d 321, 326-29 (3d Cir. 2001) (affirming

the admission of *modus operandi* evidence). "A jury can rationally infer from

evidence that the defendant committed a prior crime in an unusual and distinctive

manner and evidence that a second similar crime was committed in the same

unusual and distinctive manner that the defendant committed the second crime."

*Gov't of Virgin Islands v. Pinney*, 967 F.2d 912, 916 (3d Cir. 1992); *see also*

*United States v. Moore*, 115 F.3d 1348, 1353 (7th Cir. 1997).

Here, after accepting briefing, D.E.31, D.E.36, and entertaining oral

argument, SA189-211, the District Court complied with its obligation to "make a

threshold determination that the evidence would permit the jury to find that the

same person committed both crimes because of their similarities" "[b]efore

admitting evidence of a prior act on a theory of signature facts or *modus operandi*."

*United States v. Almendares*, 397 F.3d 653, 661 (8th Cir. 2005). The District Court

expressly addressed the "[t]wo factors [that] are relevant in analyzing the

question": "the distinctiveness of the facts that make the crimes unique and … the

proximity of the crimes in space and time." *United States v. Carroll*, 207 F.3d 465,

469 (8th Cir. 2000).

As the District Court permissibly concluded, SA194-95, Wares' crimes against Lindsay, committed in Orange County, New York, and a mere two years before his crimes against Hannah and Kaitlyn in Passaic County, New Jersey, was sufficiently proximate in time and location to support admission under Rule 404(b). Indeed, Wares was on probation for the 2010 Orange County conviction when he committed the instant offenses. SA15. The challenged evidence showed that in both the charged and uncharged crimes, Wares:

> ➢ contacted the victims through online social media using distinctive online identities such as "Cliffdog845";

> ➢ was told by the victims that they were juveniles;

> ➢ sought to meet the victims in person so that he could perform cunnilingus;

> ➢ created multiple online social media accounts in the names of the victims without their permission;

> ➢ threatened the victims, using highly profane language, with physical harm and social humiliation when they refused to comply with his requests; and

> ➢ used a distinctive handwriting that featured large circles dotting a lowercase "i."

Those similarities were more than enough to prove that Wares used a distinctive *modus operandi* and to justify admission of the 2009 crime evidence to prove identity. *See United States v. McGuire*, 627 F.3d 622, 626-27 (7th Cir. 2010) (in a prosecution for interstate travel to have sex with a minor, affirming the admission

of evidence of defendant's uncharged sexual abuse of four other victims; the evidence "was admissible as evidence of the defendant's *modus operandi*" and was not substantially more prejudicial than probative).[15]

Wares' contention that admission of this evidence nonetheless violated Rule 403 is meritless. In assessing the admission of evidence of the 2009 crimes under Rule 404(b), the District Court articulated on the record its balancing analysis and conclusion that the probative value of the evidence was not substantially outweighed by its prejudicial effect. SA200. SA210-11. As shown above, that ruling is entitled to the utmost deference on appeal.

The Court also gave a thorough limiting instruction, based on this Court's model instruction, when the evidence was admitted, SA693-95, and in its final

---

[15] *Accord*, *United States v. Kapordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009) (in a prosecution for production of child pornography, affirming admission of evidence that the defendant had previously engaged in sex acts with minors in order to prove *modus operandi*); *United States v. Cherer*, 513 F.3d 1150, 1157-58 (9th Cir. 2008) (in a prosecution for "enticing a minor," affirming admission of Rule 404(b) "identity" evidence that the defendant had previously contacted a minor via instant message for oral sex); *United States v. Delaney*, 443 F. App'x 122, 131-32 (6th Cir. 2011) (not published) (in a prosecution for production of child pornography, affirming admission of evidence of defendant's uncharged online "chats" with undercover investigators under Rule 404(b) to prove *modus operandi*; in both instances, defendant "met [the victims] on the internet, communicated with them on instant messaging using the screen name 'Z Camaro Guy' and sent them pictures of himself").

charge, SA1091-93.[16] This ameliorated any improper prejudice. *Green*, 617 F.3d at 252; *United States v. Givan*, 320 F.3d 452, 461-62 (3d Cir. 2003).

### 3.    Any Error Was Harmless.

For much the same reasons that admission of a portion of GX103a, if erroneous, was harmless, admission of the limited evidence about Wares' 2009 crimes was also harmless. The evidence of Wares' commission of the charged crimes, in which the damning accounts of Kaitlyn and Hannah were powerfully corroborated by a host of physical and forensic evidence, was so compelling that removal of evidence about Wares' 2009 crimes would not have changed the outcome. And although Wares' 2009 crimes were substantially similar to the charged crimes, the Government kept out some of the more inflammatory aspects of the 2009 crimes.[17] Thus, the jury was not unduly inflamed by the 2009 crimes, and Wares' challenge to that evidence should be rejected.

---

[16] *Compare* SA1091-93 *with* Third Circuit Model Instruction (Criminal) 2.23.

[17] In its pretrial motion for admission of the evidence of the 2009 crimes, the Government identified a host of additional common features of Wares crimes, including that Wares: engaged in repeated conversations about sex with dogs, and repeatedly asked his victims to engage in sex with dogs; and sent the victims images of his erect penis. D.E.31, 30-31; SA194-95, SA208-11. Although those additional similarities further supported the District Court's ruling, the Government here supports that ruling based only on the similarities that were admitted into evidence at trial.

III.    **THE DISTRICT COURT PERMISSIBLY EXCERCISED ITS DISCRETION BY DENYING WARES' MOTION TO BE TRIED UNDER A PSEUDONYM.**

**Standard of Review: "We review a district court's decision to grant or deny an application to litigate under a pseudonym for abuse of discretion."** ***Doe v. Delta Airlines Inc.*, 2016 WL 6989793, \*3 (2d Cir. 2016) (not published).**

Not content that the District Court permitted him to conceal his face from the jury by absenting himself during the entirety of the trial, SA241-52, SA278-82, SA412-16, SA560-63, SA792-97, SA955-58, Wares claims that the District Court abused its discretion because it did not conceal his name from the jury as well. Wares contends that, notwithstanding the Court's repeated admonitions during trial not to discuss the case with anyone or conduct their own research, including online,[18] the jurors would violate that instruction and use his name to conduct Internet searches, or that they would be exposed to prejudicial online information about Wares sent to them by others. DB17. Contrary to Wares' speculation, "jurors are presumed to follow their instructions." *Gov't of the Virgin Islands v. Mills*, 821 F.3d 448, 463 (3d Cir. 2016). The District Court did not act "arbitrarily or irrationally" by denying Wares' request to be identified only by a pseudonym.

---

[18] *E.g.*, SA294, SA325, SA405-06, SA555, SA697, SA777-78, SA1008, SA1011, SA1048-49, SA1105, SA1187.

Following briefing, D.E.32, 22-26, D.E.37, 33-35, and argument, SA158-62, the District Court denied Wares' motion for anonymity. For starters, permitting Wares to be tried under a pseudonym would cut against the "presumption of openness and public disclosure [that] applies in criminal actions." *United States v. Clayton*, 950 F. Supp. 2d 1014, 1016 (N.D. Iowa 2013) (denying motion to be tried under a pseudonym and citing cases). "The few reported cases permitting some level of anonymity for defendants in criminal cases have done so to either (a) protect a defendant from injury or harassment or (b) protect juveniles." *Id.* Wares did not advance either of those considerations in support of his request for anonymity.

More importantly, given Wares' defense of misidentification, the Government had to prove that Wares was the person who sent numerous online messages asking Kaitlyn and Hannah to communicate with, take pictures for, and/or have sex with someone named "Cliff." *E.g.*, SA1342-43, SA1347-51, SA1356. Evidence that the defendant was named Clifford Wares tended to prove that he was the person who sent incriminating Facebook messages and emails to the victims using either his actual name or variants of his name, such as "Cliffdog845." Wares never explained how the Government would be able to link him to some of the incriminating communications if the jury was ignorant of his name. *See United States v. Stoterau*, 524 F.3d 988, 1012-14 (9th Cir. 2008) (in

child pornography prosecution, rejecting defendant's motion for the appellate

decision to identify him with a pseudonym; "our precedents dictate that we grant

criminal defendants a pseudonym only in the 'unusual case, where there is a need

for the cloak of anonymity.'").[19]

Next, Wares offers nothing but speculation that any of the jurors in this case

violated the District Court's directives.[20] And that is not because he was without

the opportunity to do so. Although Fed. R. Evid. 606(b) prevents an inquiry into

---

[19] This case bears no resemblance to *United States v. Doe*, 655 F.2d 920 (9th Cir. 1981). There, the Court, pursuant to a joint motion by the parties, referred to the defendant by a pseudonym in its published opinion because he faced the risk of serious harm while incarcerated owing to his prior work as a Government informant. *Id.* at 922 n.1.

[20] In support of his anonymity motion, Wares provided the District Court with the results of a Google search that produced a three-page list of "references to Wares' convictions and history of luring teenage girls." DB25. But most of the articles on the list pertained to this prosecution, first initiated in state court and then adopted by the United States Attorney's Office for prosecution in federal court. *See* A122-23. Ware identifies no information in any of those articles that the jury did not learn about during trial.

Other articles had nothing to do with this particular Clifford Wares. *See* A123 ("Clifford Wares – Find and View People Named Clifford Wares"; "People with the name Clifford Wares in the U.S."). Still others were even further afield. *See* A124 (article referring to "Helen Clifford"; another article about "kitchen wares" and "Stephanie Renee Clifford"). Only one of the articles, not prominently featured, referenced Wares' guilty plea and sentence in a different state court case, referring to him as an "online predator." A122. But the jury learned during trial that Wares had admittedly committed similar crimes against at least one other juvenile girl, and it was not apparent from the article on the Google list that the case was different from the 2009 crime described at trial.

the jury's internal deliberations, it does not preclude a judicially approved inquiry that the verdict was the product of improper outside influences. *See United States v. Lloyd*, 269 F.3d 228, 237 (3d Cir. 2001). Such an inquiry, however, cannot be launched absent some evidence that the verdict was compromised by outside forces. *See United States v. Caldwell*, 83 F.3d 954, 957 (8th Cir. 1996). Wares never sought such an inquiry, and has presented no evidence to justify one. For all the present record shows, the use of Wares' actual name at trial caused him no harm.

## IV.    THE SENTENCE WAS PROCEDURALLY AND SUBSTANTIVELY REASONABLE.

**Standard of Review: "[W]e assess unreasonableness under the abuse-of-discretion standard." *United States v. Tomko*, 562 F.3d 558, 564 (3d Cir. 2009) (*en banc*) (citing *Gall v. United States*, 552 U.S. 38 (2007)).**

Wares challenges his sentence of life imprisonment as "excessive," DB29, but offers no argument in his appellate brief to support that claim. Instead, he "relies on his sentencing memorandum [addressed to the District Court] in further support for a reduction of [his] sentence." DB29. He asks this Court "to reduce [his] sentence to an aggregate of 25 years' imprisonment." DB30.

An appellant who fails to support his claim with argument and citations to the record and to relevant authorities has waived that claim. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 221 n.5 (3d Cir. 2015); *United States v. Irizarry*, 341 F.3d 273, 286 n.3 (3d Cir. 2003). And an appellate court should "not consider

arguments on appeal that simply direct us to filings before the district court."

*Bullock v. Carver*, 297 F.3d 1036, 1054 (10th Cir. 2002). *See also Prudential Ins.*

*Co. of Am. v. Sipula*, 776 F.2d 157, 161 n.1 (7th Cir. 1985) ("express[ing] in the

strongest terms our disapproval of this practice")

 If this Court nevertheless elects to consider this claim, it should reject it.

For starters, Wares' effectively concedes that his advisory Guidelines range was

life imprisonment based on an offense level of 43, PSR ¶¶ 34-65, and a criminal

history category of VI, PSR ¶¶ 66-76. *See* PSR ¶ 107; U.S.S.G. Chapt. 5, Part A

(Sentencing Table).

 Wares did himself no favors at sentencing. After Kaitlyn, then eighteen

years old, read a victim impact statement at sentencing, Wares "lunge[d] and [spat]

blood at [her] as she was leaving the podium," and had to be removed from the

courtroom. SA1283.[21]

 Rather than expressing remorse at sentencing, Wares told the Court that

"[t]his whole thing is ridiculous and entirely wrong. I am 100 percent innocent

from day one." SA1310. Notwithstanding four other convictions for similar

---

[21]  That conduct was not unprecedented. As the Court observed at sentencing, at
a prior proceeding during which the Court refused to accede to one of Wares'
requests, "[h]e bit the inside of his cheeks, [and] he spit blood all over my
courtroom." A1333.

conduct,[22] he asserted that "[t]his is not my background," and claimed that

"[s]omebody [is] going around stealing my identity." SA1310. Stating that he

would "never even bother with" Hannah and Kaitlyn because they were "fat and

ugly," he asserted that his "typical girl is blonde haired, blue eyed and thin."

SA1310-11. He also bragged that, even though he had received a thirteen-year

prison sentence in state court, he would serve it in a medium security institution

from which he could easily escape. SA1311. "And when I do, oh, there is going to

be problems for them," *id.*, apparently referring to the victims in this case. Wares

also sent a series of letters to Hannah and Kaitlyn from prison, purportedly from

other persons, warning them not to testify against him. SA1209-35. In one of them,

sent to Kaitlyn after trial but before sentencing, he wrote:

---

[22] *See* PSR ¶ 69 (conviction for aggravated harassment; "Wares admitted to creating a fake Yahoo! profile in the name of [the victim] who rebuked his romantic advances," his "revenge posts made it appear that his victim wanted to be 'surprise raped'"); ¶ 70 (conviction for stalking; victim met Wares on an online dating site, but after she cut off communications with him, "he started harassing [the victim] through several different screen names and threatened to rape her and kill her"); ¶ 71 (conviction for attempted coercion involving the victim Lindsay; Wares "exchanged messages and other communications with a 15-year-old girl and a male friend of hers in which he variously threatened her, created false MySpace pages in which he impersonated her, indicating she wanted various forms of sex"); ¶ 72 (conviction for disseminating indecent material to minors; while communicating online with a thirteen-year-old girl using the screenname "dogsex845," Wares "requested to have sex with the victim on multiple occasions, sometimes asking her to have sex with a dog," and sent emails to the victim "which contained sexually explicit language and pictures of male genitalia").

We told you not to testify in court and you did so any way. Now all County, State and Federal inmates will have your cell number, your home number, your email address, your home address, and all other personal information and pictures. Expect an inmate to show up at your home to rape and kill you and your family.

SA1227.

The District Court's thorough explanation of the reasons for the sentence spanned 29 transcript pages. SA1312-41. The Court explained, *inter alia*, that:

➢ Wares was "convicted of the most heinous and deplorable offenses," "with absolutely no regard that he was robbing these children of their innocence and doing irreversible damage," causing "Hannah [to] drop out of high school" and Kaitlyn to "contemplat[e] suicide," SA1312;[23]

➢ Wares "would have destroyed more lives if he had the chance," "attempt[ing] to connect with two [other] young girls, Katie and Taylor," SA1318;

➢ the sentence in this case would advance general deterrence, SA1319;

➢ specific deterrence was necessary because, particularly given his statements during sentencing, Wares "has no moral foundation" and was "probably pure evil," and "incapable of rehabilitation," SA1320;[24]

➢ the sentence was "absolute[ly]" necessary to protect the public from Wares, particularly given his threats during sentencing to continue tormenting the victims, SA1321;

---

[23] Kaitlyn also testified at sentencing that she was so fearful that she slept "with a baseball bat by [her] bed every night because [she] never know[s] who is going to come into [her] house," and that she had to be escorted to and from her car when commuting to school or work. SA1281-82.

[24] When the Court made those observations, Wares flashed "the middle finger" at the Court. SA1320.

➢ Wares' criminal history demonstrated that he had received "a slap on the wrist since he was 27 years old," SA1323, *see also* SA1324-32 (describing Wares' criminal history);

➢ Wares repeatedly offended even though he had a "loving family" and supportive mother, SA1323, *see also* SA1334-35. The Court was not ready to credit the account of Wares' mother that Wares had been sexually abused as a child, but even if true, that could not account for Wares' extreme criminal conduct over the course of many years, SA1335;

➢ the Court "scoured the [presentence report]" and "tried to look for redeeming qualities," including "the diagnosis by a psychiatrist," and a letter to the Court from Wares' mother, but could not identify "any redeeming qualities" or "anything that I can use in mitigation," SA1333;

➢ the Court acknowledged the requirement to impose a sentence that was "sufficient but not greater than necessary" to satisfy the § 3553(a) factors, and the "absolute need to avoid unwanted sentencing disparities," SA1312, 1336.

Although Wares complains that the Court placed "undue weight on the nature of the charges," DB29, he never raised that objection at sentencing. SA134. Consequently, his unpreserved claim, even had it been developed on appeal, could be reviewed only for plain error. *See Flores-Mejia*, 759 F.3d at 256. He does not mention that standard, much less attempt to meet it.

Given the absence of procedural error, any claim that the within-Guidelines-range sentence is substantively unreasonable would have to demonstrate that "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (*en banc*). Although the sentence is

indisputably severe, the District Court did not abuse its discretion by concluding that Wares—with his unremitting recidivism, lack of remorse, and earnest threats to continue his campaign of sexually abusing children when he was released—had thoroughly earned it. *See United States v. Hutchinson*, 588 F. App'x 894, 896 (11th Cir. 2014) (not published) (life sentence following guilty plea to charges of coercing minors to engage in sexual activity through the Internet, child rape, and sending a photograph of defendant's penis to a fourteen year-old victim was not substantively unreasonable); *cf. United States v. Cephus*, 684 F.3d 703, 709 (7th Cir. 2012) (life sentences without parole for conspiracy to operate a sex trafficking scheme did not violate the Eighth Amendment). The sentence, like the convictions, should be affirmed.[25]

---

[25] In any event, this Court is without authority to simply reduce Wares' sentence to a particular term of years. "Appellate courts are not sentencing courts." *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011).

## **CONCLUSION**

For all of these reasons, the Court should affirm the judgment of the District

Court.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney

By: _____
NORMAN GROSS
Assistant U.S. Attorney
401 Market Street
Camden, NJ   08101
(856) 968-4930

Date: March 3, 2017

## CERTIFICATE OF COMPLIANCE

I hereby certify as an Assistant United States Attorney for the District of New Jersey, that:

(1) this brief complies with the length limitations of Fed. R. App. P. 32(a)(7) because it contains 10,758 words;

(2) this brief complies with the typeface requirements and type style requirements of Fed. R. App. 32(a)(5) and (6) by using Microsoft WORD 2016's 14-point proportionally-spaced Times New Roman typeface;

(3) the text of the PDF and paper copies of the brief and appendix is identical; and

(4) the PDF copies of the brief and appendix were prepared on a computer that is automatically protected by a virus detection program, namely a continuously-updated version of Trend Micro OfficeScan, and no virus was detected.

By: NORMAN GROSS
Assistant U.S. Attorney

Dated: March 3, 2017

## **CERTIFICATION OF FILING AND SERVICE**

I hereby certify that on March 3, 2017, I caused the Brief and Supplemental Appendix for Appellee to be filed with the Clerk of this Court by (a) electronic filing in the PDF form using the Circuit's electronic filing system, and (b) paper filing of an original and six paper copies of the Brief and four copies of the Supplemental Appendix using postage-prepaid first-class mail.

I also certify that on March 3, 2017, I caused the Brief and Supplemental Appendix for Appellee to be served:

[X] by the Notice of Docketing Activity generated by the Third Circuit's electronic filing system, on the following Filing User:

Thomas Ambrosio, Esq.
750 valley Brook Ave.
Lyndhurst, NJ 07071
(201) 935-3005

NORMAN GROSS
Assistant U.S. Attorney

Dated: March 3, 2017